## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| KIMBERLEY CLARK, on her own behalf and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>THE J. M. SMUCKER COMPANY and THE FOLGER COFFEE COMPANY,<br><br>Defendants. | Case No.<br><br>ORIGINAL CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## **PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Kimberley Clark (hereinafter Plaintiff), individually and on behalf of all others similarly situated, brings this action against Defendants The J. M. Smucker Company and The Folger Coffee Company (collectively, "Defendants") based on Defendants' false and deceptive advertising and labeling of their Folgers ground coffee products. Plaintiff makes the following allegations based on the investigation of her counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge:

## **INTRODUCTION**

1.      Defendants have systematically overstated the number of servings of coffee that can be made from Folgers ground coffee products in order to induce consumer purchases and to charge consumers more for these products.

2.      Throughout the statute of limitations period, Defendants have sold the Folgers ground coffee products to consumers based on the representation that they contain enough ground coffee to make up to a specific number of servings (*e.g.*, "MAKES UP TO 240 6 FL OZ CUPS"). However, by following Defendants' own preparation instructions, the Folgers ground

coffee products do not contain nearly enough ground coffee to make the number of servings represented.

3.     Plaintiff and other consumers purchased the Folgers ground coffee products because they reasonably believed – based on Defendants' misrepresentations – that these products contained enough coffee to make the specified number of servings. Had Plaintiff and other consumers known the truth, they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

4.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendants' falsely and deceptively labeled Folgers ground coffee products during the statute of limitations period, for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., breach of the implied warranty of merchantability, common law fraud, and unjust enrichment.

## JURISDICTION AND VENUE

5.     This Court has federal question jurisdiction over this case under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.  Additionally, this Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because there is at least minimal diversity of one Plaintiff and Defendant that are citizens of different states, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

6.     Furthermore, jurisdiction is proper in this Court under the doctrine of pendent jurisdiction for the other Texas claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendant is actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) upon information and belief, Defendant transacts business in the State and in the District because they have contracted with residents of the District through their sales with residents of the District; (iii) Plaintiff resides in this District, and (iv) a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8.     Plaintiff Kimberley Clark is a citizen of the United States and the State of Texas and she currently resides in Cherokee County. Plaintiff purchases Folgers ground coffee products (usually Folgers Classic Roast) approximately once every two weeks from her local H-E-B, Walmart, and Brookshires grocery stores. In purchasing the products, Plaintiff saw and relied on Defendant's representations made on the packaging. For example, Plaintiff reasonably believed that the 11.3 oz. Folgers Classic Roast contained enough ground coffee to make 90 cups or servings because she saw the representation "MAKES UP TO 90 6 FL OZ CUPS" prominently printed on the front of the canister. Plaintiff's reasonable belief that the product she purchased could make the represented number of servings was an important factor in her decision to purchase the product. Plaintiff would have paid significantly less for the product had she known that the product did not contain enough ground coffee to make the represented number of servings of coffee. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and deceptive practices, as described herein.

9.     Plaintiff lacks personal knowledge as to Defendants' specific business practices. Consequently, Plaintiff believes that some Folgers ground coffee products may contain enough coffee to make the represented number of servings. For example, because Folgers makes

various different types of ground coffee products and sells them in various sizes, and because new Folgers ground coffee products may be developed and sold, Plaintiff may again purchase a Folgers ground coffee product with a label that is misleading with respect to the number of servings of coffee that can be made with the product. Moreover, Class members will continue to purchase the Folgers ground coffee products, unwittingly believing that they contain enough coffee to make the represented number of servings.

10. Plaintiff and Class members are also susceptible to reoccurring harm in that they desire to continue to purchase the Folgers ground coffee products but cannot be certain Defendants have corrected their deceptive and false advertising scheme. Indeed, Plaintiff regularly shops at stores where the Folgers ground coffee products are sold, and would like to continue purchasing the Folgers ground coffee products because she likes the taste. However, she currently cannot trust that Defendants will label and/or advertise the Folgers ground coffee products he purchased in the past truthfully and in compliance with applicable law.

11. The J. M. Smucker Company is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. The J. M. Smucker Company is one of the world's biggest packaged goods companies and it owns the Folgers brand. The J.M. Smucker Company does not maintain a registered agent in Texas.

12. The Folger Coffee Company ("Folgers") is a corporation organized and existing under the laws of the state of Ohio, with its headquarters and principal place of business at One Strawberry Lane, Orrville, OH 44667. The Folger Coffee Company does not maintain a registered agent in Texas. Beginning as J.A. Folger & Co. in San Francisco in the 1850s, Folgers coffee has become ubiquitous in American supermarkets. The 1980s Folgers' slogan

"The best part of waking up is Folgers in your cup" and the jingle made the brand recognizable in households across the country. Since the early 1990s, it has been the largest-selling ground coffee in the United States. Folgers offers a wide range of products to customers, in various sizes, flavors, roasts, strength of coffee, and methods of preparation. Folgers generates millions of dollars in sales each year, a significant portion of which is derived from sales of the Products in Texas. In 2008, Folgers was acquired by The J. M. Smucker Company from Procter & Gamble for a reported $3 billion.

## FACTUAL ALLEGATIONS

13.     The products at issue in this case consist of all varieties and sizes of Folgers ground coffee canisters (hereinafter collectively referred to as the "Products").[1]

14.     The Products are sold across the United States through third party retailers including grocery chains and large retail outlets.

15.     On the front label of each Product, Defendants represent the number of servings of coffee that can be made from the Product, (e.g., "MAKES UP TO 240 6 FL OZ CUPS.")

16.     An example of the Products' labelling is depicted below:

---

[1] Such Products include but are not limited to: 1/2 Caff (10.8 oz., 25.4 oz.); 100% Colombian (10.3 oz., 24.2 oz.); Black Silk (10.3 oz., 24.2 oz.); Black Silk Decaf (10.3 oz., 20.6 oz.); Brazilian Blend (10.3 oz., 24.2 oz.); Breakfast Blend (10.8 oz., 25.4 oz); Classic Decaf (11.3 oz., 22.6 oz., 30.5 oz., 33.9 oz.); Classic Roast (11.3 oz, 22.6 oz., 30.5 oz., 38.4 oz., 48 oz., 51 oz.); CoffeeHouse Blend (10.8 oz., 25.4 oz.); Country Roast (25.1 oz., 31.1 oz.); French Roast (10.3 oz., 24.2 oz.); Gourmet Supreme (10.3 oz., 24.2 oz.); House Blend (10.3 oz., 24.2 oz.); Simply Smooth (11.5 oz., 23 oz., 31.1 oz., 34.5 oz.); Simply Smooth Decaf (11.5 oz., 23 oz.); and Special Roast (10.3 oz., 24.2 oz.).





17.     All of the Products bear a similar representation on the front label, with the number of represented servings varying based on the size of the Product.

18.     These representations, however, consistently overstate the number of servings that can be made per canister of Product.

19.     For example, on Plaintiff's 11.3 oz. Folgers Classic Roast, the Product's label states that it "MAKES UP TO 90 6 FL OZ CUPS."  However, mathematically, the canister cannot make more than 203 cups.

20.     On the back of all the Products, Defendants recommend that consumers use 1 tablespoon of ground coffee to make 1 serving (6 fl. oz. cup) of coffee.

21.     One tablespoon of Folgers ground coffee weighs approximately .15 ounces.

22.     Using the recommended method, a 11.3 ounce canister contains only enough ground coffee to make approximately 75 cups of coffee. (11.3 ounces / .15 ounces per serving = 75.**3** servings)

23.     Put another way, it would take 13.5 ounces of Folgers ground coffee to make the promised 90 cups, which is more than the canister contains. (90 servings x .15 ounces per serving = 13.5 ounces)

24.     In this example, the 11.3-ounce Folgers Classic Roast Product makes approximately 17% fewer servings than its label promises. (75 actual servings / 90 promised servings*100 = 83.3%; 11.3 actual ounces / 13.5 ounces needed *100 = 83.7%)

25.     Using similar calculations, the Products deliver an average of 20% fewer servings than represented across a range of approximately 40 products (see *supra* n.1).

26.     Plaintiff and other consumers purchased the Products relying on Defendants' serving amount representations on the Products' packaging.

27.     Plaintiff and other consumers reasonably expect that, if they follow the serving instructions, the Products will produce the number of servings of coffee represented on the Products' packaging.

28. Plaintiff's and consumers' reasonable belief that the Products are able to make up to the represented number of servings of coffee was a significant factor in each of their decisions to purchase the Products.

29. Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of servings of coffee they are able to make. At the time of purchase, a reasonable consumer does not know the weight of a tablespoon of the Products and cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of servings of coffee they make over a period of time.

30. As the entities responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendants knew or should have known that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

31. Defendants also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' representations regarding the number of servings that can be made from the Products. Nonetheless, Defendants deceptively label the Products in order to deceive consumers into believing they are getting considerably more coffee than the Product actually contains.

32. Consumers are willing to pay more for the Products based on the belief that the Products can make more coffee than they do. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

33.    Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

34.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this suit individually and as representative of a class of similarly situated persons.  The court should enter an order to certify a plaintiff class as follows:

**Nationwide Class:**

All persons who purchased any of the Products in the United States within the applicable statute of limitations period. Specifically excluded from the class are all Federal judges and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendant, and all employees of any Defendant.

**Texas Subclass:**

All persons who purchased any of the Products in the state of Texas within the applicable statute of limitations period.

35.    The proposed plaintiff class meets the prerequisites of a class.

36.    <u>Numerosity</u>.  The class is so numerous that joinder of all members is impracticable. Plaintiff is unable to state the exact number of the members of the class without the discovery of information available to Defendant, but upon information and belief, avers that there are millions of class members. The number of the members of the class makes it impracticable to bring them all before the court.

37.    <u>Existence and predominance of common questions</u>.  There are questions of law and fact common to the class.   These questions predominate over any questions affecting only

individual members of the class. The questions of fact and law affecting the class as a whole, include, but are not limited to:

a. Whether Defendants misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b. Whether Defendants' use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c. Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendants' unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Class are entitled to damages and/or restitution, and in what amount;

f. Whether Defendants are likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

38.    Typicality.  Plaintiff's claims are typical of the claims of the class. The claims have the same essential characteristics as the claims of the members of the class as a whole and are based upon identical legal theories. It is the same course of conduct that serves as the gravamen of the claims against Defendants. The members of the class have suffered the same type of injury and possess the same interests as Plaintiff. The single resolution of these claims would be preferable to a multiplicity of similar actions.

39. <u>Adequacy</u>. Plaintiff, as the representative party, will fairly and adequately protect the interests of the class. The counsel representing Plaintiff and the class are qualified, experienced and able.

40. This suit is maintainable as a class action under Fed. R. Civ. P. 23 (b)(2) because Defendants have acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

41. This suit is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

42. <u>Predominance</u>. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The facts that are disputed will be resolved without the participation of individual class members. Plaintiff's claims do not present individual questions of causation or reliance. The facts of Defendant's practices are common to all members.

43. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the large size of the class, individual adjudication of the claims would require hundreds of lawsuits. Moreover, intervention and joinder would require the intervention or joinder of hundreds of parties. Individual adjudication, intervention, and joinder, therefore, are not reasonable options. Class treatment is superior to all other methods of adjudicating the claims of the putative class.

44. <u>Individual control</u>. The interests of members of the class in individually controlling the prosecution or defense of separate actions do not outweigh the benefits of class treatment.

Members of the class possess claims for economic damages that in most instances do not exceed a few hundred dollars. Thus, no individual class member possesses an overriding interest in the right to retain counsel and litigate to conclusion an individual claim. In fact, individual adjudication of these claims remains wholly impractical. The class members would be compelled to spend substantially more money on attorney's fees and case costs to prosecute their individual claim than the amount of each individual claim. The interest of members of the class in individually controlling the prosecution or defense of separate actions, therefore, does not outweigh the benefits of class treatment.

<u>**FIRST CAUSE OF ACTION**</u>
<u>**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.**</u>
*(for the Nationwide Class, or, alternatively the Texas Subclass)*

45. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

46. Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class.

47. The Products are consumer products within the meaning of 15 U.S.C. § 2301(1).

48. Plaintiff and Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

49. Defendants are suppliers and warrantors within the meaning of 15 U.S.C. § 2301(4) and (5).

50. In connection with the sale of the Products, Defendants issued an "implied warranty" within the meaning of 15 U.S.C. § 2301(7), which warranted that the Products could make up to a specific number of servings, when in fact the Products do not contain enough ground coffee to make up to the specific number of servings.

51.    By reason of Defendants' breach of implied warranty representing that the Products can make up to a specific number of servings, Defendants have violated the statutory rights due to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, thereby damaging Plaintiffs and Class members.

52.    Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Texas Unfair Practices Act, Tex. Bus. Comm. Code §§ 17.41 et seq.**
***(for the Nationwide Subclass, or, alternatively the Texas Subclass)***

53.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth therein.

54.    Plaintiff is a consumer under § 17.45(4) and Defendants are a persons engaged in trade or commerce under § 17.45(3) and § 17.46(a) of the Texas Unfair Practices Act.

55.    The Texas Unfair Practices Act prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." § 17.46.(a)

56.    Defendants knowingly violated the Texas Unfair Practices Act by representing in its advertising that the Products make "up to" a specified number of servings of coffee, when they do not contain enough ground coffee to make that number of servings.

57.    Pursuant to Tex. Bus and Com. Code § 17.50 Plaintiff seeks injunctive relief, actual damages, statutory damages, attorneys' fees, costs, and any other relief to which she and her fellow consumers are entitled.

58.    On January 13, 2021, Plaintiff sent a notice letter to Defendants as required under § 17.505(a). More than sixty days have passed since the letter was sent and Defendants have not remedied their conduct.

59. In that letter, Plaintiff informed Defendants that their representations were in violation at least the following subsections of section 17.46(b): (b)(5) (representing that goods or services have quantities which they do not have), (b)(7) (representing that goods or services are of a particular standard, quality, or grade if they are of another), (b)(9) (advertising goods with the intent not to sell them as advertised), (b)(20) (representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve), and (b)(24) (failing to disclose information that was known to Defendants at the time of sale that would have led the consumer to not have purchased the goods on Defendants' terms had it been disclosed). The letter further informed Defendants that as to Plaintiff they had breached both express and implied warranties.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty, Tex. Bus. Com. Code § 2.313**
***(for the Nationwide Subclass, or, alternatively the Texas Subclass)***

60. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

61. Express warranties by a seller of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

62. These warranty statutes provide that any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise, and that

any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

63.     Plaintiff and members of the class formed a contract with Defendants at the time they purchased the Product. As part of that contract, Defendants have expressly warranted on the Products' packaging that they can make up to a specific number of servings. For example, Defendants expressly state on the packaging of the 30.5 oz. canister that it "MAKES UP TO 240 6 FL OZ CUPS." However, as alleged herein, this express representation is patently false, as the 30.5 oz. canister can only make up to 173 cups of coffee, or only 72% of the amount of ground coffee promised by Defendants. All of the other varieties of the Products contain materially identical express representations that are likewise false.

64.     These representations about the Products: (a) are affirmations of fact or promises made by Defendants to consumers that the Products contain enough ground coffee to make a specific number of servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

65.     Defendants made the serving representations to induce Plaintiff and members of the class to purchase the Products, and Plaintiff and members of the class relied on the representations in purchasing the Products.

66. Each such representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the class, on the one hand, and Defendants, on the other.

67. All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff and members of the class.

68. Defendants breached the express warranties about the Products because, as alleged above, the Products are not able to make the number of servings that are represented on the Products' labeling.

69. Plaintiff and members of the class reasonably and justifiably relied on the foregoing express warranties, believing that Products did in fact conform to the warranties.

70. Plaintiffs and members of the class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the class had known of the true nature of the Products, they would not have purchased them or would have paid significantly less for them. Thus, as a result of Defendants' breaches of express warranty, Plaintiff and members of the class were damaged in the amount of the premium price they paid for the Product, in amounts to be proven at trial.

71. As a result of Defendants' breach of express warranties, Plaintiff and members of the class suffered injury and deserve to recover all damages afforded under the law.

72. On January 13, 2021, Plaintiff, by and through her counsel, sent a notice letter by certified mail to The J.M. Smucker Company and The Folger Coffee Company providing notice fo their breach and demanding that they correct, repair, replace, or otherwise rectify the breach complained of herein.

## FOURTH CAUSE OF ACTION
## Breach of Implied Warranty of Merchantability
### *(for the Nationwide Subclass, or, alternatively the Texas Subclass)*

73.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

74.     A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

75.     To be merchantable, goods must at least be fit for the ordinary purpose for which such goods are used.

76.     Defendants are merchants with respect to the Products.  Therefore, a warranty of merchantability was implied for each of the Products.

77.     By providing the Products, Defendants impliedly warranted that Products contained enough ground coffee to make the represented number of servings.

78.     However, Defendants did not provide enough ground coffee in the Products to make the represented number of servings.  Instead, Plaintiff and other members of the Class received substantially less ground coffee than promised.

79.     Therefore, the Products provided by Defendants were not merchantable and Defendants have breached their implied warranty of merchantability in regard to the Products.

80.     If Plaintiff and other members of the Class had known that the Products did not contain enough ground coffee to make the represented number of servings, they would not have purchased them and/or would not have been willing to pay as much for them.  Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiffs and other members of the Class have suffered injury and are entitled to recover all damages afforded under the law.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation
### *(for the Nationwide Subclass, or, alternatively, the Texas Subclass)*

81.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the members of the class.

83.     Defendants marketed the Products in a manner indicating that they contain enough ground coffee to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendants have made misrepresentations about the Products.

84.     Defendants' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

85.     At all relevant times when such misrepresentations were made Defendants knew or had been negligent in not knowing that that the Products did not contain enough ground coffee to make the specified number of servings. Defendants had no reasonable grounds for believing their misrepresentations were not false and misleading.

86.     Defendants intend that Plaintiff and other consumers rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the Products' packaging by Defendants.

87.     Plaintiff and members of the class have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

88.     Therefore, as a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the class have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## Common Law Fraud
### (for the Nationwide Subclass, or, alternatively, the Texas Subclass)

89.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

90.     As alleged hereinabove, Defendants have engaged in a pattern and practice of fraudulent activity, including but not limited to affirmative misstatements of fact and fraud by omission of other material facts.

91.     Specifically, on information and belief, Defendants represented that their Products contained enough ground coffee to make "up to" a certain number of 6 fluid ounce cups of coffee when they in fact did not contain enough ground coffee to do so.

92.     On information and belief, Defendants knew at the time they made such representations, or at times thereafter, that they were actually engaging in unlawful conduct as described above.

93.     Defendants were aware of the falsity of the representations alleged herein.

94.     Plaintiff and class members were not aware of the falsity of the representations or of the falsity of the perceptions created by the omissions alleged herein.

95.     Defendant intended that Plaintiff and class members rely upon the false representations and/or omissions alleged herein.

96.     The misrepresentations and/or omissions were material to Plaintiff and class members in making decisions about purchasing Defendant's Products, including decisions whether to continue purchasing the Products.

97.     Plaintiff did actually rely upon the false representations and/or omissions and such reliance was justifiable and reasonable under the circumstances.

98.     Plaintiff was harmed as a result of her reliance and has suffered economic losses. Plaintiff is entitled to recover damages against Defendant for such losses.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment/Quantum Meruit**
*(for the Nationwide Class or, alternatively, the Texas Subclass)*

99.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

100.    As alleged herein, Plaintiffs and members of the Class have reasonably relied on Defendants to provide enough ground coffee to make the represented number of servings. Plaintiff and members of the Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Class.

101.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Class – *i.e.*, Plaintiff and members of the Class did not receive the full value of the benefit conferred upon Defendants.

102.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and members of the Class back for the difference of the full value of the Products compared to the value actually received.

103.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class are entitled to restitution, disgorgement, and/or the imposition of a

constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of their counsel as Class counsel;

B.    A declaration that Defendants' actions, as described herein, violate the claims described herein;

C.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, inter alia, an order prohibiting Defendants from engaging in the unlawful act described above;

D.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

E.    An award of all economic, monetary, actual, consequential, compensatory, and punitive damages caused by Defendants' conduct;

G.    An award to Plaintiff and her counsel of their reasonable expenses and attorneys' fees;

H.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

## PLAINTIFF HEREBY MAKES HER DEMAND FOR JURY TRIAL

Dated this 23rd day of November 2021.

Respectfully submitted,

*/s/ Bonner C. Walsh*
Bonner C. Walsh
Texas Bar No. 24051766
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID 83530
Telephone:  (541) 359-2827
Facsimile: (866) 503-8206
E-mail: bonner@walshpllc.com

*Attorney for Plaintiffs*
*and the Putative Classes*